CASE 5—PETITION EQUITY—DECEMBER 17.

# Miller vs. Miller, &c.

### APPEAL FROM CLARKE CIRCUIT COURT.

M., by his will, having given his son, son-in-law, and grandson, one dollar each, disposed of his estate as follows: " It is my wish that all the property I may possess at my death be *lawfully divided* between my wife and my two youngest children." *Held*—That the words " *lawfully divided* " were used with reference, not to the mode of division, but to the estate of the devisees; and that the property goes to the wife and two youngest children, as if the testator had died *intestate* without other heirs.

SIMPSON & SCOTT, for appellant, cited 4 *Dana*, 158.

JUDGE BULLITT DELIVERED THE OPINION OF THE COURT:

Washington Miller died, leaving property, consisting of land, slaves, and personalty, worth about $20,000; leaving a widow, by whom he had no children, and four heirs, namely,

his children, Harriet, Washington, and Isaac, and his grandson, Augustus M. Bell; and leaving the following will, written by himself:

"First. I give to my son Isaac, in addition to that he has already received, the sum of one dollar.

"Second. I give to my son-in-law, William Bell, in addition to that he has already received, the sum of one dollar.

"Third. I give to Augustus M. Bell, son of William Bell, the sum of one dollar.

"Fourth and last. It is my wish that all the property I may possess at my death be lawfully divided between my wife and my two youngest children, viz: Harriet and Washington."

The executor brought this suit to obtain a construction of the will. Harriet and Washington Miller contend that the widow is entitled to only a life estate in the land and slaves, which the law would have given her if there had been no will, whilst she claims a third of all the property absolutely. The circuit judge decided that the widow is entitled to only the interest which the law would have given her if there had been no will; and a majority of us are of the opinion that the judgment must be affirmed.

The appellant's counsel contend that the word "lawfully" applies exclusively to the division, and not to the estate which the devisees are to take in the property when divided. That argument assumes that the testator attached more importance to the mode of dividing the property than to the estate therein to be taken by his devisees; because there is nothing in the will giving to the widow and the two youngest children any interest in the property, except the direction that it shall be "lawfully divided" between them. Moreover, if the testator had contemplated the mode of making the division, and not the estate given to the devisees, he would probably have designated some particular mode of dividing the property, which he failed to do. The estate of the several devisees being ascertained, a lawful division of the property must necessarily follow. Whether it shall be divided by a proceeding in chancery, or in some other mode, must be determined without reference to the will, which, upon that subject, is without meaning or effect. The words "lawfully divided"

must therefore refer to the estate to be taken by the devisees.

If the testator had directed the property to be "divided," or to be "equally divided" between his wife and his two youngest children, she would clearly have been entitled to an equal interest with them; and he would probably have used one of these expressions if he had intended to give her such an interest.

If Harriet and Washington had been his only heirs, there would have been good reason for adopting the interpretation contended for by the appellant, because there would have been no apparent motive for making the will, except the desire to give her more than she was entitled to by law. But the testator's desire to exclude two of his heirs formed a sufficient motive for making a will; and we perceive no good reason for believing that he had any other motive.

It is urged that the testator did not mean to give his wife only a life estate in the land and slaves, because he did not dispose of the remainder. But, in our opinion, he did dispose of the remainder, by giving the land and slaves to his two youngest children, subject to his wife's life estate.

We have shown that the words "lawfully divided" must have been used with reference to the estates of the devisees in the property. Used in that sense, those words seem, necessarily, to mean that the devisees shall take their lawful estates in the property; that is, the estates which the law would have given them if there had been no will.

The provisions of the will are substantially the same as if they had been expressed thus: "I wish that all my property be lawfully divided between my wife and my heirs, excepting my son Isaac, and my grandson, A. M. Bell, to each of whom I give one dollar, in addition to what he has received." If the testator had thus expressed himself, we believe there would have been no reason to doubt that his sole object was to exclude Isaac and A. M. Bell. Our view would be the same if he had excluded only one of his heirs.

In our opinion he intended that his property should go to his wife and his two youngest children, as if he had died intestate without other heirs.

The judgment is affirmed.

JUDGE PETERS, dissenting from the decision of the majority of the court, delivered the following opinion:

The only question involved in this controversy is, whether the widow of Washington Miller is entitled under his will to a life estate, or an estate in fee, in one third of his land and slaves? And the solution of that question depends upon the construction to be given to the fourth and last clause of the will, which is in the following language:

"It is my wish that all the property that I may possess at my death be lawfully divided between my wife and my two youngest children, viz: Harriet and Washington."

Where, from the language employed in the will, doubts arise as to the intention of the testator, the order or arrangement observed in the formation of the instrument may be looked to, to aid in arriving at a correct conclusion as to his intention; and that will be especially proper in a case where the will is wholly written by the testator, as was done here.

The testator, intending to make no provision in his will for his son Isaac, his son-in-law, William Bell, and his grandson, Augustus M. Bell, declared that intention by three separate and distinct clauses, applying one clause to each one of those persons respectively. But when he comes to provide for his wife and two younger children, who are to have his whole estate, he does in one and the same clause, using the identical same language in reference to all of them.

It is contended by appellees' counsel that the testator knew his wife would be entitled to dower in his land and slaves; and for the purpose of restricting her to a life estate in the one third of his land and slaves under his will, he inserted the words *lawfully divided*.

It would be strange indeed, if the testator intended to restrict his wife to a life estate in his land and slaves, that he did not declare that intention in direct and unmistakable terms, instead of leaving it enveloped in impenetrable darkness.

It is said there is nothing in the will giving to the widow and the two youngest children any interest in the property,

except the direction that it shall be lawfully divided between them; and that the argument, that the word lawfully applies exclusively to the division, and not to the estate the devisees are to take in the property when divided, assumes that the testator attached more importance to the mode of dividing the property than to the estate therein to be taken by his devisees.

The words *lawfully divided* apply as much to one of the devisees as to another; they are all named in the same clause and take by the *same words*, and the rule of construction which authorizes the disconnecting those words with the balance of the sentence, and apply them so as to make them operate on the estate of one of the three devisees named in the same sentence and connection, and restrict her to a life estate, and give to the other two devisees an estate in fee, in one third each, and then the remainder in the one third given to the wife, is novel, and certainly arbitrary.

Suppose the testator had in the same clause included his son Isaac, and it had read: It is my wish that all the property that I may possess at my death be lawfully divided between my wife and my three children, Isaac, Harriet, and Washington; could it be supposed that the wife would then be entitled to one third of the estate for life, and the three children take the two thirds, and the remaining third at the death of the widow? I think not; and I moreover think the common understanding of mankind would reject such an interpretation of the sentence; and that, as I conceive, would be as reasonable as the interpretation given to the one under consideration.

I understand the testator to have used the term *lawfully divided*, in the connection in which it is found, as synonymous with the term *equally divided*. The testator contemplated, as I assume, a division of his property under an order and by the approval of a court, which he would understand to be a lawful division; and unless it was an equal division, it would not be a lawful one.

The motive to make a will may have been as strong with the testator to provide more liberally for his wife than would be done if he died intestate, as to disinherit his son Isaac and

his grandson.  And, indeed, it would seem that, as he had previously given to them as much as he intended them to have, and there were but two children to be provided for, he could without any injustice to the only two children for whom he intended to provide, be the more liberal to his wife.

After mature consideration of the will, I can see nothing to authorize, but much to repel, the conclusion that the widow shall take only a life estate in one third of the land and slaves of the testator.  And, therefore, feel constrained to dissent from the opinion of a majority of the court in affirming the judgment of the court below.